## Robert Inkster v. The First National Bank of Marshall.

*Promissory notes: Joint makers: Sureties: Principal.* A joint maker of a promissory note who writes after his signature to the note the word "surety," does not thereby limit or change the nature of his liability to the payee or holder, nor make it any more the duty of the latter to proceed against the other maker at his request, than as if he had signed as a principal maker without adding the word surety.

*Promissory notes: Joint makers: Surety: Principal: Insolvency.* It is no defense to an action at law on such a note against such a signer, that he had requested the plaintiff to proceed and collect the note against the other maker at a time when the latter was solvent, that the plaintiff had neglected to take any steps towards complying with this request, and that such other maker had since become utterly insolvent.

*Guaranty.* Whether the result would be the same in the case of a mere guaranty : —*Quære?*

*Joint maker: Surety: Principal: Bill in equity by surety to enforce collection.* Whether such a maker might not in a court of equity, by giving proper indemnity, call upon the holder to enforce collection against the other joint maker :— *Quære?*

*Sureties: Promissory notes: Payment: Principal.* The proper course for such a signer to protect himself would be to pay the note and take it up, as it was his duty to do, and then proceed, himself, as it was his right to do, against his principal for the amount.

*Sureties.* The case of *Pain v. Packard, 13 Johns., 174,* is criticised as a clear and unwarranted departure from the common-law doctrine as to the liabilities of sureties.

*Submitted on briefs July 22. Decided July 24.*

Error to Wayne Circuit.

Plaintiff in error (who was sued in this case in the Wayne circuit) signed with C. H. White, the following note :

" $3,000. MARSHALL, Mich., Oct. 7, 1871.

" Three months after date, for value received, I promise to pay to the order of the First National Bank of Marshall, three thousand dollars, at the First National Bank of Marshall, Michigan, with interest at ten per cent. after date.

" C. H. WHITE,
. " ROBERT INKSTER, Surety."

The only defense set up by Inkster was, that on the 24th day of February, 1872, he made a request in writing

of said plaintiff to proceed and collect the note of said White; that a few months after, he again, in writing, requested the plaintiff to do so, saying that it was for White to pay the same; that, at the time of making the first request, White was solvent, and the amount of the note could have been collected of him; that afterwards White was doing business with the bank; that no suit or other proceedings had ever been commenced by the bank against White to collect the note, and that at the time of the commencement of this suit, White had become utterly insolvent, and no execution could be collected of him. Evidence was introduced tending to establish these facts, and the defendant's counsel requested the court to charge the jury, that, if they found these facts proved, the defendant was not liable.

This charge was refused, and the court charged that the facts stated constituted no defense to the action.

To this, exception was taken, and this constituted the only question in the case.

*George V. N. Lothrop*, for plaintiff in error:

It has long been held in New York that on the facts above stated a surety is discharged.—*Pain v. Packard, 13 Johns., 174; King v. Baldwin, 17 Johns., 384; Warner v. Beardsley, 8 Wend., 194; Manchester Iron Co. v. Sweeting, 10 Wend., 163; Huffman v. Hulbert, 13 Wend., 377; Herrick v. Borst, 4 Hill, 650; Valentine v. Farrington, 2 Edw. Ch., 53; Merritt v. Lincoln, 21 Barb., 249; Remsen v. Beekman, 25 N. Y., 552.*

This rule is also adopted in Pennsylvania, with the qualification that the surety must positively require the principal to be sued, with a declaration that he will otherwise be absolved.—*Cope v. Smith, 8 S. & R., 110; Erie Bank v. Gibson, 1 Watts, 143; Marberger v. Pott, 16 Penn. St., 9; Wetzel v. Sponsler, 18 Penn. St., 460; Richards v. Commonwealth, 40 Penn. St., 146.*

The same rule has been approved in some other states.

—*Hancock v. Bryant, 2 Yerg., 476; Goodman v. Griffin, 3 Stew., 160; State Bank v. Watkins, 1 Eng., 123; Lang v. Brevard, 3 Strob. Eq., 59.*

And in several states it has been adopted by statute, so evidently just is it.

Every principle of justice requires that the surety shall be protected. It is true, he binds himself to pay the debt, but his relation is understood. The real understanding is, that he will be responsible for the *ultimate* satisfaction of the debt, all parties expecting the principal to provide for it in the first instance. And therefore it is the moral and equitable duty of the creditor to look to the principal in the first instance. Hence, when the surety expressly calls, on him to take action, he cannot justly refuse or neglect to do so. This is so plain that it is conceded. And it is conceded that the surety may in equity *compel* the principal to bring suit. Thus Chancellor Kent said, in *King v. Baldwin, 2 Johns. Ch., 562,* " the surety has a right on the day the debt is due to come into chancery and insist on its being put into suit."

Now, if this is his right, I cannot see why he should be compelled to resort to the cumbrous, expensive and slow process of a suit in equity. The fruits of a suit may be lost before the relief in equity can be enforced. The whole end, without risk, without delay or costs, is obtained by the rule in New York. It is only when the principal is solvent and the debt is collectible, that the surety has a right to demand this action at the hands of the creditor; and the *onus* of showing such solvency is on the surety. Besides, if the suit should prove fruitless, as it was brought at the request of the surety, he would be liable for all necessary expenses. There is no greater end to be kept in view in the administration of justice than the simplification of remedies. The rule in New York has the highest merit in this respect.

*C. I. Walker,* for defendant in error, argued as follows:

80 MICH.—19.

Certain principles connected with the rights and liabilities of sureties may be considered as well settled.

Generally, it may be said that there is no obligation of active diligence upon the creditor as against the principal, and mere delay does not discharge the surety.—*1 Parsons on notes*, 236-7; *1 Story's Equity*, §§ 327, 629; *Adams' Equity*, §§ 522-3, and notes; *Wright v. Simpson, 6 Vesey, 734; King v. Baldwin, 2 Johns. Ch., 559*.

But if the creditor make a new contract with the principal, as by giving time or otherwise, the surety is discharged.—*Ib.* So the surety may, by a bill in chancery after the debt is due, call upon the creditor to collect the debt of the principal, and thus relieve the surety, but in such case he must indemnify the creditor against costs, expenses and delay.—*Ib.; Hays v. Ward, 4 Johns. Ch., 131-2; In re Babcock, 3 Story, 398.*

In 1816 it was for the first time held, without argument, by the supreme court of the state of New York, in the famous case of *Pain v. Packard,* that if the surety call upon the creditor to collect the debt of the principal, and he disregard that request and thereby the surety is injured, as by the subsequent insolvency of the principal, the surety was thereby discharged.—*13 Johns., 174.*

A directly contrary decision was given by Chancellor Kent, upon argument and full consideration, the following year.—*King v. Baldwin, 2 Johns. Ch., 554.* Two years later the last decision was reversed by the court of errors by the casting vote of the presiding officer, a layman, and against the opinion of a majority of the judges of the supreme court.—*King v. Baldwin, 17 Johns., 384.* This decision has ever since been followed in that state, although it has received the repeated condemnation of some of its ablest jurists, including Chancellor Walworth and Judges Cowen and Harris.—*Warner v. Beardsley, 8 Wend., 194; Herrick v. Borst, 4 Hill, 650; Schroeppell v. Shaw, 3 Com., 454.*

In Pennsylvania, and for the avowed reason that they have no court of equity, they have followed the case of

*Paine v. Packard,* with, however, this limitation, that the notice to discharge the surety must not only contain a positive request to the creditor to sue the principal, but must contain a distinct notice that if he neglects to do so the surety will claim to be discharged.—*Cope v. Smith's Executors, 8 Serg. & R., 110; Gardner v. Gardner, 15 Serg. & R., 28; Greenawalt v. Kreider, 3 Penn. St., 266.*

In two or three other states the case of *Pain v. Packard* has also been followed.—*1 Parsons, 237–8, and note.* And in several states this question has been regulated by statute.—*Ib.*

But no English case can be found to sustain these decisions, and the overwhelming weight of American authority is the other way.—*Bellows v. Lovell, 5 Pick., 310; Davis v. Huggins, 3 N. H., 231: Page v. Webster, 15 Maine, 249; Dennis v. Rider, 2 McLean, 451; Taylor v. Beck, 13 Ill., 376; Howard v. Brown, 3 Georgia, 523; Cases cited in 1 Parsons on Notes, 236–7.*

Nor is there any good reason for the decision in *Pain v. Packard.* The surety is at liberty to pay the debt and immediately bring his action against the principal, and there is no reason to compel the creditor, at his own expense and peril, to bring his action against the principal, who is no more his debtor than is the surety. Or if the surety cannot or does not desire to pay the debt he may, by indemnifying the creditor, through the intervention of a court of equity, require him to sue the principal, and as this is done for the benefit of the surety, such indemnity ought to be given. If the equitable rule of compelling the creditor to sue the principal is to be enforced in a court of law, it should be with the same equitable provision of indemnity.

CHRISTIANCY, J.

Without expressing any opinion upon the case of a mere guaranty, and without undertaking to decide whether the plaintiff in error might or might not, in a court of equity, by giving proper indemnity, have called upon the bank to proceed against White for the collection of the note; and

treating the question now before us as one of common law only (which it is), we think the circuit court was right in holding that the facts relied upon by the defendant below constituted no defense to the action.

As between him and the bank, so far as the right of action was concerned, he was a maker of the note, and a principal. As between him and White, he was but a surety; and though the bank was apprised of this by his signature upon the face of the note as surety, this did not, in reference to the question here involved, change the nature of his liability to the payee or holder, or make it any more the duty of the latter to proceed against White, at his request, than if he had signed as a principal maker without adding to his signature the word " surety."

His liability to the holder was absolute and not conditional, and his duty was to pay the note; and, though as between himself and White he was but a surety, he cannot complain of any hardship because the holder would not, at his request, proceed to bring suit against the principal, as it was in his own power, at any moment after default, to pay the note, take it up, and proceed himself against his principal for the amount. This was the duty which his contract imposed upon him by the common law, and such was the remedy which the common law gave him upon the performance of that duty. Such we understand to be the well settled general rule as to the obligation and rights of sureties, and we see nothing in this case to take it out of the general rule.

The case of *Pain v. Packard, 13 Johns., 174* (which has been followed in New York, not without some vigorous protests, and to some extent in some other states), was, we think, a clear departure from the common law; and we find nothing in the English decisions to warrant the qualifications of a surety's liabilities there recognized.

The judgment of the circuit court must be affirmed, with costs.

The other Justices concurred.