Argued September 15; affirmed October 10, 1933

IN RE CENTRAL PACIFIC RAILWAY COMPANY

## CENTRAL PACIFIC RAILWAY CO. *v.*
## AGER ET AL.

(25 P. (2d) 927)

*William Ganong,* of Klamath Falls, for appellants.

*Alfred A. Hampson,* of Portland (Ralph Horan, of Klamath Falls, and H. W. Hobbs, of San Francisco, Cal., on the brief), for respondent.

RAND, C. J. This is a proceeding instituted by the Central Pacific Railway Company to have the lands embraced within its right of way and station grounds excluded from the Klamath Irrigation District over which it owns and operates a line of railroad. The proceeding was brought pursuant to section 48-407, Oregon Code 1930, which provides that upon the petion of the owner of lands within an irrigation district being filed with the directors of the district praying that his lands, or some part thereof, be excluded from the district,

"it shall be the duty of said board to so order, upon petition therefor, as aforesaid, that all lands so petitioned to be excluded from said district shall be excluded therefrom which can not be irrigated from, or which are not susceptible to, or would not, by reason of being permanently devoted to uses other than agricultural, horticultural, viticultural, or grazing, be directly benefited by the actual irrigation of the same from a common source, or by the same system of works with the other lands of said district, or from the source selected, chosen, or provided, or the system adopted for the irrigation of the lands of said district, or which are already irrigated, or entitled to be irrigated, from

another source or by another system of irrigation works; provided, any such order of the board shall be subject to appeal to the circuit court within ten days from the date of the entry of the same''.

Subdivision (i), after providing in effect that the exclusion of lands from the district shall not operate to release the excluded lands from any obligation, lien or other indebtedness of the district which was in existence at the time of the filing of the petition, contains the following provision:

''* * * But said land so excluded shall not be held answerable or chargeable for any obligation of any nature or kind whatever, incurred after the filing with the board of directors of said district of the petition for the exclusion of said lands from the said district; * * *''.

In conformity with these provisions, the railroad company filed with the board of directors of the district its petition praying that the lands embraced within its right of way and station grounds be excluded from the district, for the reason that, because of their now being used for railroad purposes only, they were no longer susceptible to irrigation for any of the purposes specified in the statute. After the filing and the giving of notice of the petition, certain residents of the district who owned lands therein filed written objections to the exclusion of these lands and a hearing before the directors of the district was had and evidence in support of the petition and of the objections was offered, after which the directors made an order refusing to exclude said lands, or any part thereof. An appeal was then taken by the railroad company from the order made by the directors to the circuit court for Klamath county, where the matters were again heard and an order was made and entered

reversing the action of the directors of the district and granting to the railroad company the relief prayed for in its petition. From this order, the district did not appeal but an appeal was taken by the objecting landowners.

Upon the hearing in the circuit court, it appeared that the railroad company had acquired its right of way and constructed its railroad after the irrigation district had been organized and its irrigation system had been installed and that prior thereto the lands in question were irrigable and had been irrigated by means of the system provided by the district.

It was also established, and the fact was not disputed, that, after the railroad had constructed its line, none of the said lands could be irrigated for any useful purpose whatsoever and that the irrigation of them would very materially damage the railroad.

It was also established upon the hearing that the district had acquired its water and irrigation system from the United States of America, for which it was obligated to pay the purchase price and construction cost, all of which had been assumed by the district. It was also established and undisputed that there were no other obligations of the district which were a lien upon the land other than those owed by the district to the United States of America and that, prior to the time when the petition was filed with the directors, the railroad company, without any objection thereto being made by the district, had entered into a contract with the Reclamation Service of the United States by which it was agreed that the railroad company should pay its proportionate part of the entire obligation owing by the district to the government and that, upon such payment being made, all said lands embraced

within its right of way and station grounds should be discharged and released from all claims and liens of the United States as against said lands; that, pursuant thereto, the railroad company paid the entire amount so stipulated and agreed to, and had been discharged and released from all said obligations which were a charge or lien upon said lands.

After these facts had been thus established, the learned trial judge found that:

"Said lands referred to in Finding No. 1 are all permanently devoted to purposes other than agricultural, horticultural, viticultural, or grazing, to-wit, to use as railroad right of way and station grounds, and such land, by reason of the construction of railroad embankments, telegraph lines, cuts, fills, barrow pits, and drainage ditches, could not economically be cultivated. Actual irrigation of said lands would constitute a detriment to them by softening the roadbed, deteriorating wooden structures, and promoting weed growth thereon."

The contention of the objecting landowners was that, by the exclusion of these lands from the district, the maintenance and operation costs of the district, which are annually levied against the lands in the district and which they would be compelled to pay upon their own lands, would be slightly increased and, for that reason, it was contended the exclusion should not be made.

It appears that the lands of the railroad company are about four hundred acres in extent and constitute about 1 per cent of all the lands in the district, but, regardless of whether the exclusion of these lands would result in some slight increase to the landowners of the district, the statute to which we have referred expressly declares that the excluded lands shall not be

held answerable or chargeable for any obligation of any nature or kind whatsoever incurred by the district after the filing of the petition. It is plain from this provision that the objection urged against the exclusion affords no ground for holding that the lands should not be excluded from the district. The statute in plain and express terms directs that all lands which are not susceptible to irrigation, or would not, by reason of being permanently devoted to uses other than agricultural, horticultural, viticultural or grazing, be benefited thereby, shall be excluded from the district and, when so excluded, shall not be answerable or chargeable for any obligation of any nature or kind whatsoever incurred by the district after the filing of the petition for their exclusion. These provisions are mandatory and must be obeyed. Hence, if the appeal of the railroad company from the decision of the board of directors to the circuit court was properly taken, then the judgment of that court must be affirmed, because the whole evidence shows that all the lands in question were permanently devoted to another use and that none of them were susceptible to irrigation for any of the uses specified in the statute.

The objecting landowners, however, contend that the appeal to the circuit court was not properly taken because the notice of appeal was served on the officers of the district only and not on them.

In proceedings for the exclusion of lands from an irrigation district, the statute gives to all persons interested in or who may be affected by such change the right to appear and to file written objections against the proposed change and makes it the duty of the board of directors of the district to hear the petition and the objections and all evidence or proofs in-

troduced in support of the petition and of the objections thereto. This, however, does not make the objectors adverse parties in the sense that the notice of appeal must be served upon them. The only provision of the statute is that any such order of the board shall be subject to appeal to the circuit court within ten days from the date of the entry of the same. Our statute is different in that respect from the statute of California. Our attention has been called to *Harelson v. South San Joaquin Irr. Dist.*, 20 Cal. App. 324 (128 P. 1010), which states that the California statute provides a right of appeal to the superior court "to any person interested who is a party to the record". Decisions of other state courts construing statutes dissimilar from our own are generally of but little aid in construing our own statutes. In this connection it must be remembered that this is a special statutory proceeding and that the rules applicable to ordinary civil actions do not apply unless otherwise provided in the statute.

An irrigation district, under our statute, is only a quasi-municipal corporation having no specific charter and one which is organized for a particular purpose only. *Greig v. Owyhee Irr. Dist.*, 102 Or. 265 (202 P. 222). Although a quasi-municipal corporation, it is a corporate entity and, like all corporations, private and public, it is represented by its officers. In this respect, there is no distinction between an irrigation district and any other municipality. There is no provision in our statute requring a notice of appeal from the decision of the board of directors of an irrigation district to be served upon any interested landowner who may have appeared and filed objections against the exclusion of lands within the district. Nor do we find any authority in the statute authorizing

any person who appeared and objected to the exclusion to appeal from any judgment or order which may have been entered against the district. That these objectors were not adverse parties in the sense that they were entitled to have the notice of appeal served upon them, see *In the matter of Kingsbridge Road,* 4 Hun. (N. Y.) 599; *Carothers v. Wheeler,* 1 Or. 194; *In re Courthouse of Okmulgee County,* 58 Okl. 683 (161 P. 200); *Hall v. Kincaid,* 64 Ind. App. 103 (115 N. E. 361); *Rose v. Port of Portland,* 82 Or. 541 (162 P. 498).

The rule which we deem applicable is quoted from 23 Cyc. 1269 in *Rose v. Port of Portland,* supra, as follows:

"A judgment for or against a municipal corporation, in a suit concerning a matter which is of general interest to all the citizens or taxpayers thereof, as the levy and collection of taxes, or public contracts or other obligations, or public property, its title, character or boundaries, is binding, not only on the municipality and its officers, but also upon such citizens or taxpayers, in so far as concerns their rights or interests as members of the general public, although not in respect to rights which they hold as individuals, peculiar to themselves and not shared with the public. And subject to similar limitations, a judgment between certain residents or taxpayers and the municipality may be conclusive on all other citizens similarly situated."

We hold, therefore, that the service of the notice of appeal upon the secretary of the district only was sufficient and that, upon the appeal being perfected, the circuit court had full and complete jurisdiction to hear and determine all matters presented upon the appeal. There being no error, the judgment is affirmed.

BELT, KELLY and ROSSMAN, JJ., concur.