Argued March 17, affirmed May 19, 1975

PETERSON ET AL, *Respondents, v.* PORTLAND
METROPOLITAN AREA LOCAL GOVERNMENT
BOUNDARY COMMISSION ET AL (No. 86435),
*Appellants.*
535 P2d 577

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellants. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*John W. Gould,* Portland, argued the cause for respondents. With him on the brief were Dezendorf, Spears, Lubersky & Campbell and James H. Clarke, Portland.

Before SCHWAB, Chief Judge, and FORT and DENECKE, Judges.

FORT, J.

Plaintiff-landowners petitioned the circuit court for a writ of review of a final order of defendant Portland Metropolitan Area Local Government Boundary Commission approving annexation of their land to the city of Estacada. The circuit court set aside the annexation order. Defendants appeal.

This case calls upon us to determine the extent of the power of a local government boundary commission to modify an annexation proposal submitted pursuant to the so-called "triple majority" provisions of ORS 222.170.

ORS 222.111 authorizes a city to annex contiguous territory by the extension of its boundaries when such annexation is effected pursuant to procedures set forth in ORS 222.111 to 222.180, or ORS 222.850 to 222.915.

ORS 222.170(1), the so-called "triple majority rule," provides in part as follows:

"(1) The legislative body of the city need not call or hold an election in any contiguous territory proposed to be annexed, or post notice in the contiguous territory, if *more than half of the owners of land in the territory, who also own more than half of the land in the contiguous territory and of real property therein representing more than half of the assessed value of all real property in the contiguous territory consent in writing to the annexation* of their land in the territory and file a statement of their consent with the legislative body on or before the day:

"(a) The public hearing is held under ORS 222.120, if the city legislative body dispenses with submitting the question to the registered voters of the city * * *." (Emphasis supplied.)

In 1973, a petition was filed with the Estacada City Council for the annexation to the city of 37.97 contiguous acres of land with a total assessment value of $653,390. A majority of the landowners in the affected territory, owning more than half of the land area therein and representing more than half of the assessed real property valuation therein, consented in writing to the annexation. Accordingly, on November 15, 1973, the Estacada City Council dispensed with an

election in the affected area and resolved to approve the proposed annexation.

As required by ORS 199.490(3)(a), 199.460(1), and 199.425(1),[1] the petition and annexation resolution were submitted for approval to the Portland Metropolitan Area Local Government Boundary Commission.

■ A "minor boundary change" for purposes of the statutes governing boundary commissions is defined by ORS 199.415(13) as "an annexation or withdrawal of territory to or from a city or district." The plan as approved by the Estacada City Council and forwarded to the Commission therefore qualified as such.

ORS 199.461(1) to (3) outlines the general procedure to be followed by the Commission in acting upon, inter alia, a proposed minor boundary change. Those provisions are as follows:

"(1) When the boundary commission receives a petition in a boundary change proceeding, it shall:

"(a) Cause a study to be made of the proposal offered by the petition.

"(b) Conduct one or more public hearings on the proposal.

---

[1] ORS 199.490(3)(a):

"(3) When a city annexation is initiated:

"(a) As provided by ORS 222.170 or 222.750, the petition proposing the annexation shall be filed with the boundary commission having jurisdiction of the annexation."

ORS 199.460(1):

"(1) A boundary commission has jurisdiction of a proceeding to consider a boundary change if any part of the territory included or proposed to be included within the affected city or district is within the jurisdiction of the commission."

ORS 199.425(1):

"Three local government boundary commissions hereby are created, one having jurisdiction in each of the following areas:

"(1) The area consisting of Columbia, Washington, Multnomah and Clackamas Counties."

"(2) After the study and hearings, the boundary commission *may alter the boundaries set out in a petition for* formation or a *minor boundary change* of a city or district or in a petition for consolidation of cities *so as either to include or exclude territory.* If the commission determines that any land has been improperly omitted from the proposal and that the owner of the land has not appeared at the hearing, in person or by his representative designated in writing, the commission shall continue the hearing on the petition and shall order notice given to the nonappearing owner requiring him to appear before the commission and show cause, if any, why his land should not be included in the proposal. Notice to nonappearing owners may be given by personal service or by letter sent by first-class mail, at least 10 days prior to the date to which the hearing has been continued. The required notice may be waived by the nonappearing owner.

"(3) On the basis of the study and after hearing, the boundary commission shall approve the proposed boundary change as presented or as modified by the commission or disapprove the proposed change, by an order stating the reasons for the decision of the commission. Any person interested in a boundary change may, within 30 days after the date of a final order, appeal the order for review under ORS 34.010 to 34.100." (Emphasis supplied.)

After complying with the procedural prerequisites, the commission on February 6, 1974, issued findings and an order wherein the petition was modified to include 81 additional acres of land having an assessed value of $1,576,995. Had the total 118.97 acres been the subject of the original petition, then the quantum of written consent actually obtained from the affected landowners would have been insufficient to waive the election requirement under the triple majority provisions of ORS 222.170. Moreover, those landowners who did file their approval to the annexation consent-

ed to an annexation plan involving 37.97 acres of land, rather than 118.97 acres.

In an opinion filed August 2, 1974, the circuit court set aside the order of the boundary commission, declaring:

"* * * * *

"The intent of ORS 222.170 is to facilitate an annexation if the 'triple-majority' requirements are met. Clearly, on examination of the facts of this case, this requirement is not met—the right to modify does not include the right to abandon the 'triple-majority' requirement. Modify, as used in the statute would seem to be the right to diminish.

"The property owners included in the expanded area, to be annexed to Estacada either have to be a part of the 'triple-majority' or [have] a right to vote on annexation. The informed consent requirement under *Skourtes v. City of Tigard* (1968) 250 Or 537, 444 P2d 22 must be met.

"* * * * *."

In *Water, Park & Rec. Dist. v. City*, 8 Or App 290, 492 P2d 812, Sup Ct *review denied* (1972), we had occasion to consider certain aspects of the Local Government Boundary Commission statute and said:

"The various entities which Oregon has recognized as quasi-municipal corporations have attributes far different and power far greater than a boundary commission: school districts (*Board of Directors v. Peterson*, 64 Or 46, 52, 128 P 837, 129 P 123 (1913)); road districts (*Board of Directors v. Peterson*, supra); irrigation districts (*Central Pacific Co. v. Ager*, 144 Or 527, 533, 25 P2d 927 (1933)); and transportation districts (*Horner's Market v. Tri-County Trans.*, 2 Or App 288, 467 P2d 671, 677, Sup Ct *review denied*, 90 Adv Sh 1681, 256 Or 124, 471 P2d 798 (1970)).

"Each of the kinds of corporations noted above is engaged in providing services to people and has

been given corporate powers by the legislature, including the powers to sue and be sued; to buy, hold and dispose of property; to enter contracts; to make necessary rules and regulations; and to tax.

"Another guideline for determining whether a corporation has been created is the intent of the legislature. 1 Fletcher, Cyclopedia Corporations § 64 (rev ed 1963); 1 McQuillin, Municipal Corporations § 2.03, § 2.13 (3d ed rev 1971).

"School districts (ORS 332.072), utility districts (ORS 261.215), and mass transit districts (ORS 267.200), have been designated by the legislature as corporations. Although an irrigation district has not been declared a corporation, it is given broad powers. ORS 545.070, 545.090, 545.108.

"The boundary commission does not have any corporate powers listed above except the power to make rules and regulations, including setting the salaries of its employes, ORS 199.530(2) and to accept and hold real property. A grant of such powers is not inconsistent with those of an administrative agency. *See,* e.g., ORS 496.155, 496.160, 496.330, State Game Commission; ORS 516.090, 516.130(2), Department of Geology and Mineral Industries." (Footnotes omitted.) 8 Or App at 304-306.

■■ The legislative purpose in enacting ORS ch 199 is set forth in ORS 199.410(2) and provides:

"The purpose of ORS 199.410 to 199.514 is to provide a method for guiding the creation and growth of cities and special service districts in Oregon in order to prevent illogical extensions of local government boundaries and to assure adequate quality and quantity of public services and the financial integrity of each unit of local government."

Nothing in that section is indicative of a legislative intent to suggest an intention to defeat the triple majority provision of ORS 222.170 by granting to the

boundary commissions the power to defeat its clear purpose by bringing into a city or other municipal corporation property not meeting its requirements. Furthermore, to do so would, as we pointed out in *Water, Park & Rec. Dist. v. City,* supra, violate a basic rule of statutory construction. There we said:

"* * * Both statutes can be given effect without reaching a conflict between them.

"'It is, of course, a cardinal rule of statutory construction that when it is contended that two statutes are in conflict the statutes must, whenever possible, be construed together and in such a manner as to be consistent, rather than in conflict, thus giving effect to both statutes.' *McLain v. Lafferty,* 257 Or 553, 480 P2d 430, 432 (1971)." 8 Or App at 302.

*See also:* ORS 222.111(3) for further indication of legislative intent.

ORS ch 199, governing local government boundary commissions, and ORS 222.170, incorporating the triple majority rule, establish a scheme which scrupulously preserves the right of those whose territory is sought to be annexed to vote on the issue, except under the limited circumstances of a health hazard annexation (ORS 222.855 et seq.) or where it is clear that such an election would be an idle gesture. ORS 199.505(1) provides:

"(1) If the boundary commission by its final order approves a minor boundary change, the change shall take effect 45 days after the date the commission adopts the final order approving the change. However, the change shall not take effect unless it is also approved by the qualified voters if within 45 days after the date of the order:

"(a) Written objections to the change signed by not less than 20 percent of the qualified voters in the affected territory are filed with the commission; or

"(b) A resolution objecting to the change adopted by the city council of the affected city or district board of the affected district is filed with the commission."

■ However, when the annexation procedure has been initiated by a city council pursuant to the triple majority provision of ORS 222.170, and the annexation as proposed is approved by the commission, the provisions of ORS 199.505(1) are not applicable. ORS 199.495(1)[2] expressly so provides. The obvious intent of the legislature in establishing this exception to the election procedures of ORS 199.505(1) was to eliminate the possibility of an election in the limited circumstance where consent procedures had already established that annexation was the clear will of the property owners in the affected territory. *See also:* ORS 222.111(3).

■ That the "triple majority" rule is a substitute for and not in derogation of the election process is made clear in the opinion of our Supreme Court in *Skourtes v. City of Tigard,* 250 Or 537, 444 P2d 22 (1968). There the court stated:

"ORS 222.170 was enacted to provide an additional method of annexation as an alternative to the procedure by which a proposal for annexation is submitted to the registered voters of the territory proposed for annexation. Under that procedure the boundaries of the territory proposed for annexation must be described before the electors in the territory vote on the proposal.

"It is reasonable to infer that the legislature intended that the alternative procedure under ORS 222.170 would also include a disclosure of the boundaries of the territory proposed to be annexed." 250 Or at 540.

---

[2] ORS 199.495(1):

"If the proposed annexation is approved by the commission, the final order shall be effective on the date the order is adopted and shall not be subject to ORS 199.505."

This conclusion is supported by the legislative history of ORS 222.170. The following is excerpted from written testimony submitted by the League of Oregon Cities to the House Committee on Local Government in support of Senate Bill 181 which was subsequently enacted as Oregon Laws 1961, ch 511:

"Under SB 181, two-thirds of the property owners who own two-thirds of the land and two-thirds of the assessed valuation in an area contiguous to a city could request to be annexed. It would be possible, therefore, to work out more orderly boundaries because the area to be annexed would not have to be confined exclusively to properties where specific consent was obtained, as is the case under the present law. (The inclusion of such additional territory is *not* a departure from the principle of existing annexation law since under the election procedure an entire area can be annexed by a majority vote, or 51 per cent, in the outside territory. It should also be borne in mind that consent procedures are not employed when the question of annexation is highly controversial. The *consent method is designed for small areas where a substantial majority of the property owners seek to be annexed.*)"[3] (Second emphasis supplied.)

Hugh McKinley, City Manager of Eugene, testified before the Senate Committee on Local Government that the purpose of the bill was to eliminate the time and expense involved in conducting an election where a substantial majority of the property owners in a given area desire to become a part of the city.[4]

In 1973, the "triple two-thirds" requirement of Oregon Laws 1961, ch 511 was reduced to the present "triple majority requirement." Oregon Laws 1973,

---

[3] Excerpt from letter April 24, 1961 from League of Oregon Cities to House Committee on Local Government.

[4] Excerpt from minutes of meeting of Senate Committee on Local Government February 21, 1961.

ch 434. Written testimony submitted by the League of Oregon Cities in support of House Bill 3105, which affected this change, declared that the amendment "brings the consent procedure more into conformity with the concept of majority rule than would be expressed at an election, yet it is still a more stringent requirement than a simple majority of those voting in an election."

■ We conclude that the legislature did not intend, by the enactment of ORS ch 199, to give a local boundary commission the authority to order the annexation of any area which does not meet the requirements of the triple majority statute (ORS 222.170), regardless of the fact that the area originally petitioned for did so comply in the absence of an election in the affected area otherwise authorized by law therein. It may not, under ORS 199.461, "alter the boundaries" of the area it orders to be annexed in excess of that which meets the triple majority requirement of ORS 222.170.

Affirmed.